**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2440-WJM

D'ANNA L. HOUSEMAN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION AND
REMANDING TO THE COMMISSIONER**

---

    This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff D'Anna L. Houseman ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner") denying her application for disability and social security benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

    For the reasons set forth below, the ALJ's denial of benefits is reversed and the case is remanded to the Commissioner for rehearing.

## I. BACKGROUND

### A.   Procedural Background

Plaintiff filed her application for disability insurance on August 15, 2009 (Admin. Record ("R.")  216- 218) Following the initial administrative denial on May 4, 2010 (R. 116-121), Plaintiff then requested a hearing before the ALJ on April 13, 2010.  (R. 124-125).  Two hearings were held in Colorado Springs on February 8, 2011 and June 1, 2011 before ALJ Kathryn D. Burgchardt.  The ALJ issued an unfavorable decision on July 27, 2011, finding Plaintiff "not disabled." (R. 33-41, 42-74). The Appeals Council declined to review the ALJ's decision on July 18, 2012 (R. 1-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  This appeal followed.

### B.   Factual Background

Heavily contested before the Court are two medical conditions that the ALJ found as non-severe—specifically: lichen planus, and chiari malformation type I.  For the purposes of background, examination of each condition is relevant to disposition of the appeal.

With respect to lichen planus, Plaintiff was evaluated by physicians at the University of Colorado dermatology clinic for erosive vulvovaginal and oral lichen planus in March 2010.[1]  (R. 607.)  The condition had been present for 17-18 years.  (*Id.*)  The

---

[1]  Plaintiff summarized lichen planus as a disorder of the skin and mucous membranes resulting in inflammation, itching, and distinctive skin lesions.  (ECF No. 13 at 12.)  Erosive lichen planus (ELP) affecting mucosal surface (*i.e.* the condition Plaintiff suffers from) is a chronic autoimmune disease of unknown etiology. Treatment is difficult and aimed at palliation rather than cure. (*Id.*)

physicians indicated that she had previously been treated with topical steroids without a significant decrease in symptoms, that she could not tolerate those medications for a long period of time due to atrophy, but that she had used "a topical oral steroid" on an as-needed basis that appeared to reduce but not eliminate her inflammation. (R. 607). The physicians noted lesions on Plaintiff's genitals and in her mouth, and prescribed an oral antifungal drug (Griseofulvin) as well as a steroid (dexamethasone elixir). (R. 608). Two months later, Plaintiff underwent biopsies of her reproductive tract, which confirmed lichnoid vaginitis. (R. 697).

Plaintiff underwent additional reproductive tract biopsies in February 2011. (R. 806.) Svetlana Tsirkin MD reported an "extremely scarred perineum" and that Plaintiff's vaginal tissue would bleed when touched, and noted that her condition was "worsening." (*Id.*) The biopsy had findings consistent with an early phase of lichen sclerosis (scarring). (R. 809).

With respect to her chiari malformation type I condition, Plaintiff has a history of migraine headaches. (ECF No. 13 at 19.) On February 26, 2010, Plaintiff was examined by the consultative examiner Timothy R. Hudson MD. In his report, Dr. Hudson observed that Plaintiff had "[b]alance difficulties secondary to her chiari malformation." (R. 533). Dr. Hudson's observed that Plaintiff exhibited "concentration difficulties" and exhibited confusion during the relatively short examination, and reported that there be follow up in regards to her migraines with [a] trained neurologist." (R. 532)

On July 27, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 30, 2006. (R.

22.) The ALJ determined at step two that Plaintiff's "fibromyalgia; migraines; degenerative joint disease bilateral knees status post knee replacements; carpal tunnel syndrome status post release" were *severe* impairments, but that her chiari and lichen planus impairments were not. (R. 22-23). At step three, the ALJ concluded that Plaintiff's impairments did not meet the criteria of any of the *per se* disabling impairments listed at 20 C.F.R. pt. 404, subpart P, app. 1. (R. 23).

The ALJ then found that Plaintiff could perform sedentary work with the following limitations—*i.e*, that Plaintiff could lift or carry less than ten pounds frequently and ten pounds occasionally; could stand and/or walk, with normal breaks, for a total of two hours in an eight hour workday and could require the use of a cane; could sit with normal breaks, for a total of six house in an eight hour workday; required the option to sit or stand every half-hour to an hour for five minutes at a time; could perform pushing and pulling motions with her upper extremities with the aforementioned weight restriction, but should avoid pushing or pulling motion with her legs, moving machinery, and extreme heat and cold; and could occasionally climb, stoop, crouch, kneel, and crawl, and should not climb ladders, ropes, or scaffolds. (R. 23-24).

Based on this residual functional capacity finding, the ALJ determined at step four that Plaintiff was not disabled because she could return to her past relevant work as a receptionist. (R. 26-27). In addition, based on vocational expert testimony, the ALJ made an alternative step five finding that Plaintiff was not disabled because she could perform other work existing in significant numbers in the national economy. (R. 27-28). The ALJ found that Plaintiff had not been under a disability—and the claim for benefits was, therefore, denied.

## II.  STANDARD OF REVIEW

The Court reviews adverse decisions of the Commissioner to determine (1) whether substantial evidence in the record as a whole supports the factual findings, and (2) whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  *Id.*  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," a district court "meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may neither reweigh the evidence, nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  Moreover, the ALJ may "not make speculative inferences from medical reports and may reject a treating physician's opinion outright *only* on the basis of contradictory medical evidence and *not* due to his or her own credibility judgments, speculation or lay opinion."  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

As the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues."  *Id.*  This duty exists even when the claimant, as here, is represented by counsel.  *Id.* at 480.  *See also Haga v. Astrue*, 482 F.3d 1205,

1208 (10th Cir. 2007) (stating that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking parts favorable to nondisability").

### III.  ANALYSIS

The Appeals Council denied Plaintiff's request for review on the ALJ's decision. Plaintiff then filed this action seeking review of that decision. On appeal, Plaintiff raises several interrelated issues: (1) whether the ALJ failed to evaluate at step two of the sequential evaluation process, Plaintiff's lichen planus, obesity[2] and Chiari malformation type I to be severe impairments, (2) whether the failure to evaluate step two, then tainted subsequent steps in the sequential evaluation process including, *inter alia*, (a) the RFC and (b) questions to the vocational expert, and (3) whether the ALJ's RFC finding does not include all of the limitations contained in the medical opinions that were adopted by the ALJ, and relatedly, whether the ALJ engaged in 'picking and choosing' among medical reports to support a finding of disability.

Because the Court finds that the ALJ's findings at steps two through four were not supported by substantial evidence and did *not* include all of the limitations contained in the medical opinions, the Court finds that this error requires remand. Since these same deficiencies tainted the ALJ's hypothetical questions to the vocational expert, the Court also finds that this issue warrants remand. *See Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996) (recognizing that remand is appropriate where further fact finding is needed).

---

[2] The Court notes that it makes no adjudication on Plaintiff's obesity condition, but encourages review of this condition singly and in combination with others upon remand.

### A.     Whether the ALJ Failed to Evaluate at Steps Two to Four of the Sequential Evaluation Process

Plaintiff contends that the ALJ failed to evaluate the substantial evidence in the record at steps two through five of the sequential evaluation process.  Specifically, the ALJ failed to properly evaluate and make findings with respect to Plaintiff's non-severe impairments because she did not rely upon substantial evidence in the record—including evidence of her treating physicians.

#### 1.     Step Two Analysis

Pursuant to 20 C.F.R. § 404.1520, step two of the sequential evaluation process requires that the ALJ assess a claimant's medically determinable severe impairments. An "impairment" is defined as an anatomical, physiological, or psychological abnormality which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  *See* 20 C.F.R. §§ 404.1508 and 416.908.
All a plaintiff needs to provide is a "*de minimis*" showing of medical severity. *See Williams v. Bowen*, 844 F. 2d 749 (10th Cir. 1988).  A "severe" impairment is one that significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1521; 404.1529; 416.921 and 416.929. *See* Social Security Rulings 85-28; 96-3p and 96-4p.

The ALJ found that Plaintiff had the following *severe* impairments: fibromyalgia, migraines, degenerative joint disease bilateral knees status post keen replacements; carpal tunnel syndrome status post release. (R. 22).  The ALJ also determined that

Plaintiff's lichen planus [3] and chiari malformation type I were *non-severe* impairments. (R.22).

Much of Plaintiff's argument in this Court focused on the ALJ's finding that Plaintiff's lichen planus was *not* considered a severe impairment at step two of the sequential evaluation process. (ECF No. 13 at 17.) Plaintiff contends that this finding is not supported by substantial evidence and constitutes reversible error because it is overwhelmed by evidence of treating physicians who proffer evidence to the contrary. (*Id.*) The Court agrees.

The evidence of the treating physicians is addressed in detail in Plaintiff's briefing. (ECF No. 13 at 12-17.) The evidence is incorporated herein. To illustrate, the Court summarizes the following medical reports to demonstrate the evidence of Plaintiff's condition (and severity of same):

- Svetlana Tsirkin, MD — Report I dated February 17, 2011 (stating "Extremely scarred perineum, friable vaginal tissue. ...")
- Svetlana Tsirkin, MD — Report II dated February 17, 2011(stating "pelvic exam under anesthesia. ... about 20 years, *worsening* ... Pain, itching, burning ...constant burning, especially noticing some burning when voiding. ... treatment for years.)
- Ronald S. Gibbs, MD – Report date June 29, 2010 (stating "... lichenoid vulvitis and vaginitis with a history of a Candida albicans infection, and previous episode of abnormal bleeding... an examination under anesthesia, vaginal and vulvar biopsies, and an

---

[3] Plaintiff has been diagnosed with chronic erosive lichen planus for over two decades. (R. 56). The condition affects skin on her throat, gums and tongue making it difficult to talk (R. 57). In Plaintiff's case, the lichen planus is so severe that it has created scar tissue in her genitals requiring numerous surgeries. (R. 77-78). This condition limits Plaintiff with regard to sitting, and causes frequent and lengthy bathroom breaks due to bleeding and clotting. (R. 57-58).

> endometrial biopsy. ... pap smear that showed ASCUS ... biopsy showed lichenoid vaginitis on one biopsy, chronic inflammation on the other, and the endometrial biopsy showed simply proliferative endometrium. ...")

(*See* R. 806-807; 832-835; 697-698.)

Notwithstanding the fact that the ALJ made a limited effort to analyze the medical reports above, those same reports tend to show Plaintiff's condition is one towards the severe end of the spectrum;[4] a condition that Dr. Tsirkin stated was worsening as of February 17, 2011. (R. 832-835.) This undercuts the ALJ's finding because it brings into question whether the substantiality test has been satisfied when there is plentiful evidence contradicting the ALJ's decision. Indeed, the Court holds that the substantiality test has not been met in this case, which further warrants a basis for remand. *Flaherty* 515 F.3d at 1070 (stating that a court "meticulously examines the record as a whole, including anything that may detract from the ALJ's findings to determine if the substantiality test has been met.")

Alternatively, and at best, the evidence in the record creates a potential ambiguity because of the fluctuating symptoms exhibited by Plaintiff over time (a twenty year period), but if anything this should have prompted the ALJ to seek further evidence from additional physicians before finalizing her decision on July 27, 2011. Such ambiguity should have compelled the ALJ to seek such evidence to "fully and fairly develop the record." *See Baca*, 5 F.3d 476, 480 (10th Cir. 1993) (stating that the ALJ

---

[4] The Court has deliberately used this phraseology because upon remand, and reconsideration of all the evidence (and possibly new evidence), the degree of severity will ultimately be determined by the ALJ upon remand.

has a basic duty of inquiry to "fully and fairly develop the record as to material issues.")

Accordingly, the Court holds that the ALJ's finding that lichen planus was non-severe is not supported by substantial evidence primarily because the ALJ has not evaluated all of the medical opinions relevant to Plaintiff's condition.[5]  *Grogan*, 399 F.3d at 1261-62 (stating that "evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.")  And because the finding does not meet the substantiality test, the Court must remand for re-consideration.[6]

---

[5] The corollary to this holding is that the ALJ's finding is conclusory due to the limited evaluation of Plaintiff's condition, notwithstanding that there is an abundance of evidence in the record by treating physicians.  (See R. 806-807; 832-835; 697-698.)  In substance, there is only one paragraph dedicated to lichen planus by the ALJ.  (R. 4.)  To comply with her duty, the ALJ will need to review all of the medical reports in greater detail upon remand (and assign necessary weight to each).  See *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) ("[A]n ALJ must give good reasons . . . for the weight assigned to a treating physician"opinion, . . . to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.")  Here, the ALJ's decision does not conform with *Langley* because weight has not been assigned to all of the medical opinions.  The Court is left to second guess what weight was given to each opinion, which only reinforces the need for remand.  And to this point, and the materiality of this issue, the Court notes that the ALJ well may need to obtain further medical evidence on Plaintiff's condition so that the record can be properly developed before a final ALJ decision is made.  *See Baca*, 5 F.3d 476, 480 (10th Cir. 1993) (stating that the ALJ has a basic duty of inquiry to "fully and fairly develop the record as to material issues.")

[6] The Commissioner counters that because Plaintiff had endured lichen planus for two decades, this justified the ALJ's finding that the condition was not severe as defined under the statute.  (ECF No. 21 at 13.)  But this point misses the mark.  Dr. Tsirkin stated, among other things, that Plaintiff's condition was "worsening" as of February 17, 2011.  (R. 832-835.)  This makes any past medical history of endurance less relevant, particularly when Plaintiff's condition is viewed in the context of her other impairments.  The record at 56-58 is also illustrative of the specific and acute limitations the condition imposes on Plaintiff, which is only reinforced by what is said in medical reports—noting that she had both oral and vaginal lesions.  (*See* R. 806-807; 832-835; 697-698.)   The Court thus rejects what the Commissioner submits at ECF No. 21 at 13.

2.     Step Three Analysis

Plaintiff contends that because ALJ erred at step two of the sequential evaluation process, the ALJ similarly erred at step three.  Because of this, Plaintiff contends that the ALJ "never addressed any of the skin impairments found in Section 8.00 of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  (ECF No. 13 at 22.)   While the Court finds in favor of Plaintiff on this issue, it will not go as far as substituting the ALJ's decision (at step three) without first remanding the decision for further consideration.   This is a better approach for two reasons.  First, it allows the record to be further developed as to the degree and severity of Plaintiff's lichen planus condition (singly and in combination with other conditions).  Second, it affords the ALJ the opportunity to draw a legal conclusion on whether the Section 8.00 listing impairments are satisfied in view of reconsideration of the entire record.   Remand is, therefore, warranted for these reasons as well.  *See, Salazar v. Barnhart*, 486 F.3d 615, 621 (10th Cir. 2006).

3.     The RFC Analysis

Next, Plaintiff challenges the ALJ's RFC determination on the argument that is not supported by substantial evidence and fails to include limitations had the ALJ made correct findings at step two of the sequential evaluation process.  (ECF No. 13 at 27.)

The RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1).  The RFC is an assessment of the most a claimant can do despite his or her limitations.  *Id.*  Examples of the types of evidence required to be considered in making an RFC assessment are the claimant's medical history, medical signs and laboratory findings, and medical source statements.

Soc. Sec. Ruling (SSR) 96–8p (July 2, 1996). An ALJ must make specific RFC findings based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996):

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96–8p.

The ALJ's findings regarding the RFC must be supported by substantial evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff challenges the ALJ's RFC determination on four fronts. First, Plaintiff contends that the ALJ's error at step two creates a flawed analysis by the ALJ at step four of the sequential evaluation process because the ALJ has not adequately addressed the limitations and restrictions of Plaintiff's lichen planus condition since it has been classified as non-severe.

For reasons stated in steps two and three, the Court agrees with Plaintiff's position. In short, because the ALJ failed to (1) satisfy the substantiality test, and (2) fully and fairly develop the record with respect to Plaintiff's lichen planus condition, those same errors infect the RFC determination. The limitations from that condition have not been properly considered and the RFC determination is not predicated on substantial evidence This constitutes reversible error; ever more so when such

limitations could be material to determining whether Plaintiff can perform past work.[7] (ECF No. 13 at 14.)

The second argument is put in the alternative to the first, and intersects with the arguments made at steps two and three. Specifically, the argument goes that *even if* the lichen planus condition *is* considered 'non-severe', Plaintiff contends that the ALJ never examined the condition in *combination with the impairments* that were found by the ALJ to be severe. (*emphasis added*.) (ECF No. 13 at 14-15, 29-30.)   Without undertaking this evaluation, Plaintiff contends that the ALJ could not have addressed *all* of the limitations for the purposes of an RFC determination—thus the RFC determination is based on substantial evidence. The Court agrees. *See* SSR 96–8p. *See also, Salazar*, 486 F.3d at 621. There, the Court held that an "ALJ is required to consider *all* of the claimant's medically determinable impairments, singly and in *combination*; the statute and regulations require nothing less." (emphasis added.) Failure to do so, the Court said, "is reversible error." *Id.*

Here, there is no evaluation of how Plaintiff's licen planus condition—when combined with other severe conditions found in the record—impact and, therefore, limit Plaintiff's activities. Among other things, there is no discussion by the ALJ of how Plaintiff's speech problems—resulting from oral lichen planus—would impact her ability

---

[7] Any notion that Plaintiff did not show that she was limited by lichen planus is absurd. Not only did Plaintiff endure "irregular uterine bleeding" (R. 23) but Plaintiff also indicated that she would sometimes spit up blood. (R. 56.) Even assuming Plaintiff did not indicate that her condition as limiting, the symptoms present ample evidence for reasonable inference to be drawn that the condition was limiting. *See Pinnt v. Chater*, 988 F. Supp. 1354, 1360 (D. Colo. 1997) (stating that "the ALJ is entitled to draw reasonable inferences.") At best, it creates an ambiguity in the record that would compel the ALJ to seek further evidence to "fully and fairly develop the record." *See Baca*, 5 F.3d 476, 480 (10th Cir. 1993)

to make phone calls and schedule appointments. (R. 56-58.) There was recent evidence that Plaintiff had lesions in her mouth and spitting up blood. This has been addressed earlier. And this alone should have been enough to warrant evaluation of how Plaintiff's condition, particularly in recent years, limit her ability to work as a secretary. Because of evaluation of these limitations is lacking in the ALJ decision, this requires separately reversal and remand of the ALJ decision. *See also Langley*, 373 F.3d at 1123-24.

Plaintiff's third argument with respect to the RFC targets inconsistencies in the ALJ's reliance on the medical evidence. [8] Plaintiff contends that the ALJ's decision did not accurately reflect the opinions of Dr. Hudson with respect to Plaintiff's chiari condition that impacts the RFC. The Commissioner did not address this argument in briefing and effectively forfeits the point. [9] *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir.1992). But for the record, and to elucidate Plaintiff's point, the ALJ stated that she assigned "great weight" to Dr. Hudson's opinion generally and stated that she adopted his views with respect to Plaintiff's impairments. (R. 26.)

Notwithstanding this, the ALJ then failed to consider Dr. Hudson's views with respect to Plaintiff's mental impairments—*i.e.* (1) that Plaintiff had "[b]alance difficulties secondary to her chiari malformation" (R. 533); and (2) that Plaintiff exhibited "concentration difficulties" and exhibited confusion during the relatively short

---

[9] The Commissioner's brief solely concentrates on the evidence of Dr. Randall J. Bjork. (ECF no. 21 at 14.) And while such evidence is favorable to the Commissioner's position, it fails to meet head on the evidence of Dr. Hudson who had been afforded great weight by the ALJ. (R. 26.)

examination, and reported that there be follow up in regards to her migraines with [a] trained neurologist." (R. 532-33.)   Despite affording Dr. Hudson's opinion "great weight", these limitations did not make their way into the ALJ decision, nor the RFC analysis.  Given the "great weight" afforded to Dr. Hudson, these omissions provide an independent basis for remand in so far that the RFC determination has not been based on substantial evidence because it lacks  limitations indicated by the consultive examiner that are clearly in the record and have not been addressed by the ALJ.  Material inconsistencies such as this require explanation, and warrant remand. SSR 96-8p; *see Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Finally, the Court also finds that the ALJ's analysis, with respect to Dr. Hudson, illustrates the 'picking and choosing' of evidence that Tenth Circuit authorities seek to guard against.[10]  This only reinforces the need for remand.  The Court finds as much. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir.2004) (stating that "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.")

In sum, and for the reasons stated above, the Court finds that remand is warranted because there is a lack of substantial evidence to support the RFC finding. *See generally Flaherty*, 515 F.3d at 1070.

---

[10] The Court also notes that the ALJ failed to resolve the apparent inconsistency with the opinion she relied on, *i.e.,* Dr. Bjork's opinion in 2007 that it was of "no consequence." (R. 23). This also demonstrates a deficiency in the ALJ decision because the adjudicator must  explain how any material "inconsistencies or ambiguities" in the evidence in the record were considered and resolved for the purposes of the RFC determination. *See* SSR 96–8p.

**B.     The ALJ's Hypothetical Questions to the Vocational Expert Did Not Precisely Reflect Plaintiff's Limitations**

Plaintiff contends that the ALJ erred with respect to the hypothetical questions proposed to the vocational expert because they did not reasonably reflect Plaintiff's limitations.  (ECF No. 13 at 38.)  Such error, Plaintiff says, derives from the RFC determination.  As noted in *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008), Plaintiff argues that *Carpenter* (like the present case) illustrates the problems associated with an incomplete RFC assessment—*i.e.* the limitations omitted from the RFC finding are also omitted from the hypothetical questions proposed to the vocational expert at step five of the analysis resulting in a defective determination as to Plaintiff's abilities to do work in the existing economy.  (*Id.*)

Plaintiff argues, therefore, that the ALJ erred on the basis that the vocational expert's opinion lacks precision as to all of Plaintiff's medical limitations.  *See  Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.")  The Court agrees.

To support this finding, the Court incorporates all of the limitations that have been omitted in the RFC analysis above.  By way of example, however—and to show how *one* of these omissions constitutes cause for remand—the Court reiterates that the ALJ failed to address how severe and non-severe impairments (in combination*)* limited Plaintiff for the purposes of the RFC determination.  It follows that because the ALJ did not provide the vocational expert with limitations that could have flowed from combined

impairment analysis (since the ALJ did not evaluate same), the correct questions were not proposed to the vocational expert. The questions were thus predicated on a defective RFC determination. This would have misled, or, at best, confused the vocational expert into believing that Plaintiff could undertake certain tasks that she could not do had the impairments been viewed in combination.

What compounds the issue further is the fact that there were two hearings and two vocational expert opinions. (R. 33-41, 42-74.) Reconsideration by the ALJ, therefore, has the added benefit of allowing for the correct questions be put to one final vocational expert, predicated on a proper RFC determination.

Accordingly, the Court concludes that because the ALJ's deficiencies are material (*i.e.* not precise), it is sufficient to taint the substantiality of the vocational expert's testimony. See *Hargis*, 945 F.2d at 1492. Since the evidence is tainted by these omissions, substantial evidence is lacking in this case for the ALJ to have made the correct determination as to Plaintiff's claim to disability benefits. The Court finds that remand is required to resolve these deficiencies. See *Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

**C.     Harmless Error**

Finally, it is worth addressing the fact that the Commissioner concedes, in part, that the ALJ has committed error. (ECF No. 21 at 5, 12-13.) The Commissioner argues, however, that these omissions were *not* prejudicial because all the deficiencies at step two were addressed in later stages of the analysis. (*Id.* at 5, 12-13.) The Court disagrees—particularly in light of the deficiencies that have been addressed

above.[11]

Courts apply the harmless error doctrine cautiously in the administrative review setting. *Fischer-Ross.*, 431 F.3d at 733. An error is only harmless when the Court can "confidently say that no reasonable administrative fact-finder, following the correct analysis, could have resolved the factual matter in any other way.' *Id.* at 733-34. Here, the Court has no confidence that the factual deficiencies in this case could be resolved another way because the deficiencies are material omissions from the steps two to four of the sequential evaluation process. As such, the ALJ's errors are *not* harmless because the jobs identified by the vocational expert are not predicated on the correct limitations that must derive from substantial evidence. Indeed, the Court finds this type of error is more toward the significant end of the spectrum which does nothing to save the decision from remand.

**D.     Remaining Arguments**

Plaintiff raises additional issues related to the sufficiency of the underlying proceedings. Because the Court finds that the ALJ's RFC was not supported by substantial evidence and that this error alone requires remand, it need not address the other arguments raised by Plaintiff—particularly in circumstances where the Commissioner's harmless error argument has been rejected. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

---

[11] Plaintiff's reply brief also does much to negate the Commissioner's harmless error argument. Those points, in the brief, are incorporated herein. (ECF No. 22 at 5-12.)

The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered.[12]  It is entirely possible that, given the passage of time, the ALJ could arrive at the same conclusion and find that Plaintiff is not disabled—particularly if all of the medical opinions are afforded proper evaluation, and accorded weight.  The Court notes that given the nature of Plaintiff's lichen planus condition, the Court has signposted that further medical (and recent) medical evidence may be required to make the proper determination as to Plaintiff's disability. The Court ultimately, however, leaves that decision to the discretion of the ALJ to decide.  *See Henderson v. Astrue*, 383 Fed. Appx. 700, 702 (10th Cir. 2010).

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Dated this 30th day of August, 2013.

BY THE COURT:

William J. Martínez
United States District Judge

---

[12] The Court does not intend by this opinion to suggest that a favorable result for Plaintiff should be reached on remand; rather, the Court encourages the parties, as well as the ALJ, to consider the evidence and the issues anew.